Johnny C. Grace, Jr., was convicted of two counts of robbery in the first degree, violations of § 13A-8-41, Ala. Code 1975. Grace was sentenced to 99 years' imprisonment on each count; these sentences were to be served concurrently. This Court affirmed Grace's convictions and sentences in an unpublished memorandum. See Grace v. State (CR-02-1017, Oct. 24, 2003), 897 So.2d 1247
(Ala.Crim.App. 2003) (table).
Grace appeals, challenging the trial court's restitution order. As noted below, the final restitution order was entered after
this Court issued its unpublished memorandum on Grace's direct appeal. Because of the nature of the proceedings in this case, we will consider Grace's challenge to the restitution order in this appeal.[1] See Rule 4(a)(1), Ala. R.App. P.; Rule 26.11(a), Ala. R.Crim. P. See, generally, Ex parte Fletcher,849 So.2d 900, 906-07 *Page 303 
(Ala. 2001) (defendant appealed from denial of motion to reconsider restitution order, which was not entered until after sentencing).
Grace contends that the trial court exceeded its authority in ordering him to pay restitution to the victims of the crime, and to the Crime Stoppers community program and the Governor's office, both of which offered a reward to assist in solving this crime. For a full understanding of Grace's claims, we set out the following timeline:
10/17/02 Grace was convicted of two counts of robbery in the first degree. (C. 23.)
10/24/02 The district attorney ("DA") filed a motion for restitution, seeking $4,500 for the
 losses incurred by the victims, $1,000 assessment to Crime Stoppers "for funds
 paid out following the receipt of information leading to the arrest of" Grace.
 (C. 1, 23.)
11/19/02 The DA filed an amended motion for restitution, detailing the losses suffered by
 the victims in the total sum of $6,750, and seeking a $1,000 award to Crime
 Stoppers, and seeking a $5,000 award to "the State of Alabama . . . for the
 reward paid by the Governor to the informer for information leading to the
 arrest and conviction of" Grace. The DA also filed a motion to order payment
 of the Governor's reward. (C. 3, 5, 23.)
12/03/02 Grace filed a request for a restitution hearing, contending that all codefendants
 were jointly liable for the restitution, that proof was required of the amounts
 the DA claimed as restitution, and that no sums should be paid to Crime
 Stoppers or the Governor's office. (C. 6, 22.)
12/30/02 The DA filed a request for hearing, withdrawing its request for the restitution
 for the Governor's reward, and requesting that the trial court determine how
 much of a reward, if any, the informant was entitled to prior to a restitution
 hearing, pursuant to § 15-9-4, Ala. Code 1975. (C. 8.)
01/23/03 The trial court sentenced Grace to 99 years' imprisonment on each count and
 directed that he pay a fine of $5,000 and a victim's compensation assessment fee
 of $1,500. (C. 24, 25.)
02/18/03 The DA filed another amended motion for restitution, notifying the trial court
 that some of the property for which the victims sought compensation was in the
 possession of the sheriff, and further requesting the trial court to award the
 victims $450 for attorney fees they incurred in preparing documents related to
 this matter. (C. 9, 25.)
02/19/03 Grace filed a motion to reconsider sentences, a motion for a judgment of
 acquittal, a motion in arrest of judgment, and a motion for a new trial. (C. 24.)
03/07/03 The trial court's docket entry stated: "All motions denied." (C. 25.) The trial
 court made a separate docket entry denying Grace's posttrial motions. (C. 24.)
05/22/03 The DA filed a motion for clarification of the trial court's restitution order,
 noting that "[t]he Circuit Clerk has indicated that restitution was not ordered in
 this . . . case"; noting that on March 7, 2003, the trial court "issued an order
 directing that `all motions are denied'"; noting that the trial court did not
 conduct a restitution hearing; requesting the trial court to clarify whether the
 DA's restitution motions were included in the trial court's order denying all
 motions; and requesting the trial court to award restitution to the victims in the
 sum of $5,121.83, to award restitution to Crime Stoppers in the sum of $1,000,
 and to award restitution to the Governor's office in the sum of $5,000.
 (C. 10-11, 25.)
 *Page 304 
05/22/03 The trial court entered an order setting aside its March 7, 2003, order disposing
 of all motions and granting the DA's motions for restitution. (C. 25.)
05/28/03 Grace filed an objection to the award of restitution without a hearing, contending
 that he had previously requested a hearing, and arguing that any further
 amendment to a restitution order was time-barred. (C. 12, 26.)
06/05/03 The trial court entered an order, setting a restitution hearing for August 25,
 2003, but the hearing was continued. (C. 26.)
10/24/03 The Alabama Court of Criminal Appeals upheld the convictions and sentences.
 (C. 26.)
12/05/03 A hearing was held on the pending restitution motions. (R. 1.)
12/16/03 The trial court entered an order, directing Grace "to pay restitution" to the
 victims in the sum of $5,121.83, "to reimburse" Crime Stoppers in the sum of
 $1,000, and "to reimburse" the Governor's office in the sum of $5,000.
 (C. 14, 26.)
01/09/04 Grace filed a notice of appeal from the trial court's restitution order.
 (C. 15, 26.)

At the restitution hearing on December 5, 2003, Grace, through counsel, argued that the trial court lacked jurisdiction to address the State's restitution claims because, Grace contended, any claim for restitution was "time-barred" and Grace argued that Crime Stoppers and the Governor's office were not "victims" and were, thus, not entitled to restitution. The trial court granted the State's request for restitution, and ordered that Grace pay $5,100 to the victims of the crime, $1,000 to Crime Stoppers, and $5,000 to the Governor's office. Grace reasserts those arguments in this appeal.
 I.
Grace's first argument is that the trial court lacked jurisdiction to modify or to amend its original restitution order. Grace contends that the State was required to submit its motion for restitution within 30 days of sentencing, pursuant to Rule 24.1(b), Ala. R.Crim. P., and contends that, pursuant to Rule 24.4, Ala. R.Crim. P., any such motion filed by the State was denied as a matter of law 60 days after it was filed. In this case, the record reflects that the district attorney filed a motion for restitution before sentencing and that the trial court did not rule upon the restitution motion until four months after sentencing. The trial court subsequently withdrew its restitution order, based upon Grace's objection that a hearing had not been held as required by § 15-18-67, Ala. Code 1975, and entered its final restitution order in December 2003, 11 months after sentencing.
As the State points out, Grace's jurisdictional argument has previously been determined adversely to him. See Hill v.Bradford, 565 So.2d 208, 210 (Ala. 1990) (holding that trial court did not lose jurisdiction to enter restitution award 30 days after sentencing and that restitution order entered by trial court 15 months after sentencing was appropriate). As we recently stated in State v. Redmon, 885 So.2d 850, 853 (Ala.Crim.App. 2004), "[a] trial court retains jurisdiction to hold a restitution hearing more than 30 days after the date of sentencing." We also observed in Redmon, quoting in part from *Page 305 Roberts v. State, 863 So.2d 1149, 1155 (Ala.Crim.App. 2002), that restitution was mandatory and that the trial court is "`statutorily obligated'" to determine restitution "to fully compensate all victims." 885 So.2d at 853-54.
Grace, in his reply brief, argues that the language in Hill, which this Court relied upon in Redmon, was dicta and has no precedential effect. Grace also contends that Redmon is distinguishable because in Redmon the trial court reserved the issue of final restitution. However, the language in Hill is not dicta; rather, it was the Alabama Supreme Court's response to one of the issues raised by the defendant, i.e., whether the trial court lost jurisdiction to impose restitution where the restitution order was entered more than 30 days after the defendant was sentenced. Furthermore, while the trial court inRedmon did initially retain jurisdiction to determine final restitution (pending the outcome of medical treatment for one of the victims), the trial court later declared that it had lost jurisdiction to impose additional restitution after 30 days.Redmon was before us on the petition for a writ of mandamus filed by the State. We granted the writ and directed the trial court to determine what restitution was owed, even though more than 30 days had passed since sentencing.
Grace, in his reply brief, cites Jolly v. State,689 So.2d 986 (Ala.Crim.App. 1996), in support of his argument. In Jolly, this Court stated that the trial court's imposition of restitution more than 30 days after sentencing was appropriate on the authority of Hill. While we expressed reservations about the Alabama Supreme Court's decision in Hill, we noted that we were bound by that opinion. Jolly, 689 So.2d at 987-88. Since our opinion in Jolly, the Alabama Supreme Court has not seen fit to change its ruling. We recently reiterated our intention to follow the precedence of the Alabama Supreme Court by again applying Hill in Redmon.
Based upon Hill and its progeny, we conclude that the trial court did not lose jurisdiction to impose restitution and that the trial court's restitution order entered 11 months after sentencing was not untimely.
 II.
Grace next argues that Crime Stoppers and the Governor's office are not "victims," as that term is used in the restitution act. See § 15-18-65 et seq., Ala. Code 1975. This issue presents a case of first impression.
 "When a defendant is convicted of a criminal activity or conduct which has resulted in pecuniary damages or loss to a victim, the court shall hold a hearing to determine the amount or type of restitution due the victim or victims of such defendant's criminal acts. . . . [T]he court shall order that the defendant make restitution or otherwise compensate such victim for any pecuniary damages. . . ."
§ 15-18-67, Ala. Code 1975. See also Rule 26.11(a), Ala. R.Crim. P. ("Restitution should be ordered in all cases where a victim has been injured or damaged.").
 "As used in this article, the following words and terms shall have the meanings respectively ascribed by this section.
 "(1) CRIMINAL ACTIVITIES. Any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant.
 "(2) PECUNIARY DAMAGES. All special damages which a person shall recover against the defendant in a civil action arising out of the facts or *Page 306 
events constituting the defendant's criminal activities. . . .
 "(3) RESTITUTION. Full, partial or nominal payment of pecuniary damages to the victim or to its equivalent in services performed or work or labor done for the benefit of the victim as determined by the court of record.
 "(4) VICTIM. Any person whom the court determines has suffered a direct or indirect pecuniary damage as a result of the defendant's criminal activities. . . ."
§ 15-18-66, Ala. Code 1975.
In this case, the Governor's office and Crime Stoppers paid an informant a total of $6,000 in reward money for information that led to the arrest and conviction of Grace and others. Grace argues that a "victim" under the act is one who could recover damages in a civil action, and, he argues, neither the Governor's office nor Crime Stoppers could maintain a separate civil action for the money paid to an informant to secure the arrest and conviction of a defendant. Grace argues that extending the right to restitution to agencies such as those exceeds the intent of the Legislature.
Section 15-18-65, Ala. Code 1975, sets forth the legislative purpose of the restitution act:
 "The Legislature hereby finds, declares and determines that it is essential to be fair and impartial in the administration of justice, that all perpetrators of criminal activity or conduct be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof. The provisions of this article shall be construed so as to accomplish this purpose and to promote the same which shall be the public policy of this state."
In Butler v. State, 608 So.2d 773, 775 (Ala.Crim.App. 1992), we wrote:
 "The legislative purpose of the restitution act was to fully compensate victims for `any pecuniary loss, damage or injury' suffered as a direct or indirect result of a criminal act. § 15-18-65. `Victim' is defined in the act as `[a]ny person whom the court determines has suffered a direct or indirect pecuniary damage as a result of the defendant's criminal activities.' § 15-18-66(4). We have construed `victim' to encompass persons who were not necessarily the primary object of the defendant's criminal conduct. See Harris v. State, 542 So.2d 1312 (Ala.Cr.App. 1989); Kyser v. State, 513 So.2d 68 (Ala.Cr.App. 1987); Welcher v. State, 504 So.2d 360 (Ala.Cr.App. 1987). The act provides that a victim may recover from a convicted defendant all special damages that a person could have recovered in a civil suit. § 15-18-66(2). Special damages are those that flow naturally but not necessarily from a wrongful act. McLendon Pools, Inc. v. Bush, 414 So.2d 92 (Ala.Civ.App. 1982).
 "`Before a defendant can be held liable for damages, it must be established that his criminal act was the proximate cause of the injury sustained by the victim.' Strough v. State, 501 So.2d 488, 491
(Ala.Cr.App. 1986). See also Day v. State, 557 So.2d 1318 (Ala.Cr.App. 1989)."
While the State concedes this case presents an issue of first impression, it contends that the Governor's office and Crime Stoppers are "victims" under the restitution act. The State observes that other states have determined that those who pay rewards for the apprehension of a criminal may be reimbursed by way of restitution; it cites the following out-of-state cases to *Page 307 
supports its position:[2] People v. Dillingham,881 P.2d 440 (Colo.Ct.App. 1994); In re D.D.G., 532 N.W.2d 279
(Minn.Ct.App. 1995); State v. Hazlitt, 77 Or.App. 344,713 P.2d 617 (1986). In Dillingham, 881 P.2d at 442, the Colorado Court of Appeals, with one judge dissenting, determined that a reward offered by the victim for the return of his property fell within the language of that state's restitution statute, which called for restitution for "`actual, pecuniary damages sustained by the victim' as a result of the defendant's conduct." In D.D.G.,532 N.W.2d at 282-83, the Minnesota Court of Appeals determined that a reward offered and paid by the sheriff's office for information leading to the arrest of the person who telephoned a bomb threat to a school was properly included in a restitution award. The Minnesota court declared that the reward was "`out-of-pocket losses resulting from the crime'" (quoting Minn.Stat. §611A.04.1(a) (Supp. 1993)), and stated that "the reward offer would not have occurred but for appellant's conduct." InHazlitt, 77 Or.App. at 348, 713 P.2d at 618-19, the Oregon Court of Appeals determined that a reward paid by the victim's insurer might properly be included in a restitution award, depending upon the purpose for which the reward was paid. The Oregon restitution statute, ORS 137.101 et seq., is similar to Alabama's statute. The Oregon court, in remanding the case to the trial court, specifically noted: "Defendant does not argue that the insurer was not a `victim' or that the losses it suffered were not `pecuniary damages.'" 77 Or.App. at 349,713 P.2d at 619. In fact, none of the cases cited by the State addresses the exact issue currently before us — whether a third-party payor of a reward is a "victim" under the restitution act.
In Murphy v. State, 641 So.2d 1256, 1257 (Ala.Crim.App. 1993), a case in which we addressed Alabama's restitution act, we wrote:
 "It is well settled that `if a statute is not ambiguous or unclear, the courts are not authorized to indulge in conjecture as to the intent of the legislature or to look to the consequences of the interpretation of the law as written.' Ex parte Presse, 554 So.2d 406, 411 (Ala. 1989). Additionally, `it is the duty of this court to give effect to the intent of the legislature as expressed in the words contained in that statute.' M.C. v. State, 600 So.2d 387 (Ala.Cr.App. 1991)."
Similarly, in State v. Brooks, 701 So.2d 56, 57-58
(Ala.Crim.App. 1996), we observed:
 "It is the duty of the court to give effect to the legislative intent expressed in the clear language of a statute. Parker v. Hilliard, 567 So.2d 1343 (Ala. 1990). If the legislature intended for some date other than the date of conviction to control under § 32-5A-191(f) [the DUI *Page 308 
statute], it is the province of the legislature to clarify the matter in the language of the statute. We must `enforce the statute as written.' Allen v. Hawes, 539 So.2d 273, 276 (Ala.Civ.App. 1988).
 "Even if it were to be conceded that the language of § 32-5A-191(f) is somewhat unclear, `"ambiguous criminal statutes must be narrowly interpreted, in favor of the accused." United States v. Herring, 933 F.2d 932, 937 (11th Cir. 1991)[, vacated on rehearing, 977 F.2d 1435 (11th Cir. 1992)]. "[I]t is well established that criminal statutes should not be `extended by construction.'" Ex parte Evers, 434 So.2d 813, 817 (Ala. 1983). "`[C]riminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed.'" United States v. Bridges, 493 F.2d 918, 922 (5th Cir. 1974).' Carroll [v. State], supra, 599 So.2d [1253] at 1264 [(Ala.Crim.App. 1992)]."
As we explained in Butler, 608 So.2d at 775, we have previously construed the term "victim" "to encompass persons who were not necessarily the primary object of the defendant's criminal conduct." In support of this position, we cited Harrisv. State, 542 So.2d 1312 (Ala.Crim.App. 1989); Kyser v. State,513 So.2d 68 (Ala.Crim.App. 1987); and Welcher v. State,504 So.2d 360 (Ala.Crim.App. 1987). In Harris, 542 So.2d at 1313, we held that the deceased victim's aunt, who raised him, was a victim under the restitution act and was entitled to recover medical and burial expenses incurred in caring for her nephew up to the time of his death and the expenses incurred after his death, and was also entitled to recover medical and counseling expenses incurred by her in seeking treatment for her anguish over the death of her nephew. In Kyser, 513 So.2d at 73, we stated that the mother, father, and brother of the deceased victim were entitled to restitution for burial expenses, medical expenses, and lost wages, though we did not specifically state that they were "victims" under the act. However, in Welcher,504 So.2d at 365, we concluded that the deceased victim's mother was a "victim" as defined in the restitution act and could receive restitution from the defendant. We have also previously determined that third parties may, under certain circumstances, be reimbursed by way of restitution, where those persons or entities pay or advance moneys on behalf of a victim. See Forev. State, 858 So.2d 982 (Ala.Crim.App. 2003) (Alabama Crime Victims Compensation Commission entitled to restitution for benefits paid for and on behalf of injured person); Hagler v.State, 625 So.2d 1190 (Ala.Crim.App. 1993) (insurance company entitled to restitution for medical and hospital benefits paid on behalf of injured person).
A trial court is afforded broad discretion in determining what restitution should be awarded. However, on occasion, this Court has interfered with a trial court's award of restitution. See, e.g., Franks v. State, 644 So.2d 1277, 1278 (Ala.Crim.App. 1993) (damages for pain and suffering not properly awarded as restitution); Gladden v. State, 644 So.2d 1267, 1268
(Ala.Crim.App. 1993) (same); Murphy, 641 So.2d at 1257 (wife of defendant not entitled to receive restitution for loss of defendant's income). Moreover, in Day v. State, 557 So.2d 1318, 1318-19
(Ala.Crim.App. 1989), the trial court awarded restitution to Ronnie Johnson, the actual victim of the crime and to Isabelle Patterson, a person who was present when the defendant shot Johnson.
 "It is clear that this statute authorizes the trial court to order a defendant to pay restitution to any person who falls within the definition of `victim' and who suffered either direct or indirect pecuniary losses as a result of the defendant's *Page 309 
activity for which he has been convicted or to which he has admitted. We have construed the term `victim' to encompass persons who were not necessarily the primary object of defendant's criminal conduct. See Kyser v. State, 513 So.2d 68 (Ala.Cr.App. 1987) (wherein we held that defendant in manslaughter case was properly ordered to pay restitution to deceased's parents and brother for medical expenses, burial expenses, and lost wages they incurred as a result of defendant's criminal activity). See also Welcher v. State, 504 So.2d 360 (Ala.Cr.App. 1987) (wherein we held that mother of deceased in criminally negligent homicide case fell within definition of `victim' and was entitled to restitution from defendant as reimbursement for her wages lost as a result of her appearances in court during defendant's trial). However, the instant case differs from those above in that in those cases the `victims' were being compensated for losses resulting indirectly from criminal conduct for which the defendant was indicted and convicted. In the instant case, appellant was ordered to pay restitution to Patterson after being convicted of the attempted murder of Johnson, an offense which was not alleged in the indictment or proven at trial to be the cause of Patterson's injury. `Before a defendant can be held liable for damages, it must be established that his criminal act was the proximate cause of the injury sustained. . . .' Strough v. State, 501 So.2d 488, 491 (Ala.Cr.App. 1986). While there was some evidence in the record tending to show that appellant did cause Patterson's injury, he was not on trial here for causing her injury, nor had he been convicted of causing her injury. There was also testimony by Patterson that appellant stated in a telephone conversation after the incident that he did not intend to shoot her, but had meant to shoot Johnson; however, we do not consider this to be the type of admission contemplated by the restitution statute, which we interpret to require a judicial admission sufficient to support a conviction before restitution can be ordered.
 "If it could be said that Patterson's injury arose from appellant's attempted murder of Johnson, for which he was convicted, then she could properly be characterized as a victim, and restitution to her would be proper. However, when one suffers a loss which resulted from conduct that was not the subject of the defendant's prosecution and for which a subsequent prosecution would be necessary to determine the defendant's criminal liability, if any, we hold that an order of restitution to that person is no more appropriate than would be the sentencing of the defendant to a term of imprisonment without first affording him the basic constitutional guarantees of a trial and verdict on those charges. Appellant should not have been ordered to pay restitution to Patterson."
Day, 557 So.2d at 1319.
Based upon the language of the restitution act, the payments of rewards by Crime Stoppers and the Governor's office do not constitute "pecuniary damages"; thus, the payors of the rewards cannot be "victims" as that term is used in the restitution act. While it is a noble act for any person, entity, or agency to post a reward to aid in the capture, arrest, and conviction of those who commit crimes against our citizens, and while it may be a desirable practice to require the criminal to reimburse the payors of these rewards, it is not our place to write the law in this regard. Neither the State nor Grace has cited, and we are not aware of, a provision that allows a trial court to award restitution to the payors of rewards. The statute that *Page 310 
permits the Governor's office to pay a reward, see § 15-9-1 et seq., Ala. Code 1975, does not provide a method by which that office may be reimbursed for funds it pays out to an informant. Cf. § 15-23-14, Ala. Code 1975, which provides a mechanism for the Alabama Crime Victims Compensation Commission to be subrogated and reimbursed for funds paid by it on behalf of victims.
Based on the foregoing, the trial court's award of restitution to the Governor's office and to Crime Stoppers was error. We therefore remand this case to the circuit court with directions that the restitution order be amended in accordance with this opinion. In summary, the actual victims of the crime are entitled to be compensated by way of restitution; the Governor's office and Crime Stoppers, however, have no statutory right to be compensated under the restitution act. The trial court shall take the necessary action to see that the circuit clerk makes due return to this Court within 21 days of the release of this opinion.
REMANDED WITH DIRECTIONS.*
COBB, BASCHAB, SHAW, and WISE, JJ., concur.
[1] The State does not argue that this appeal is improper. The State, in fact, claims that the trial court's modification of the restitution order after the conclusion of Grace's direct appeal was permissible under Rule 29, Ala. R.Crim. P. We pretermit determination of whether Rule 29 applies in this case, based upon the other authority referenced by us in this opinion.
[2] The State also references an unpublished opinion from California, People v. Fizzell, [No. F040300, March 13, 2003] (Cal.Ct.App. 2003) (unpublished). In Fizzell, the California court determined that the mother and stepfather of the deceased victim were "victims" under California's penal code and were entitled to be reimbursed for publication costs they incurred in seeking information leading to the arrest of the person responsible for the victim's death. The term "victim," under California's code, included those persons "who sustained economic loss resulting from a defendant's criminal acts." Fizzell citesPeople v. Ortiz, 53 Cal.App.4th 791, 797-98, 62 Cal. Rptr.2d 66
(1997), which held that the parents of the victim were entitled to receive restitution for moneys they paid for publication costs and as a reward for information leading to resolution of the subject crime. Though Fizzell is not reported, Westlaw reports that it is "[n]o longer good for at least one point of law." There is no authority cited by Westlaw to support this statement, nor is the "point of law" identified.
* Note from the reporter of decisions: On October 22, 2004, on return to remand, the Court of Criminal Appeals affirmed, without opinion.